IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

2016 FEB -3 ℗ 2: 34

Sarah Johnston Ball,                      )        Civil Action No. 2:13-3007-RMG
                                          )
                    Plaintiff,            )
                                          )
        v.                                )        **AMENDED MEMORANDUM OPINION**
                                          )
Capital Bank and Trust Company;           )
American Funds Distributors, Inc.;        )
Marine Linehandlers, Inc., *successor to* )
*Charleston Line Handling Corporation*,   )
                                          )
                    Defendants.           )
_____)

        This matter is before the Court on the parties' cross-motions for judgment (Dkt. Nos. 106,

107, 108, 109). The parties have stipulated that they do not object to the Court rendering judgment

on the papers (Joint Stipulation 4, Dec. 29, 2015, Dkt. No. 114). The matter has been fully briefed

and is now ripe for disposition.

## I.    Issues Before the Court

        The parties stipulated that the substantive issue this Court should resolve is "[w]hether,

upon the death of the account owner, Edward Robbins Ball, Jr., the funds in SIMPLE IRA Account

63288878 should have been paid as directed on CBT/AFD 000502: 'as elected by the

beneficiary.'" (*Id.*)[1]  The Court, however, is called upon to adjudicate Plaintiff's claims against

Defendants, and after consideration of the law, the record, and the parties' briefs, the Court

concludes that the substantive issue stipulated by the parties is not dispositive of Plaintiff's claims.

_____

[1] The issue stipulated by Defendant Marine Linehandlers, Inc., "whether the disputed funds should
remain in the possession of Brenda Ball or [whether] some portion of the funds [should be]
remitted to Sarah Ball," is irrelevant for the reasons explained in the Court's order dismissing
Brenda Ball from this action (Order, June 8, 2015, Dkt. No. 78).

There is no dispute that the funds in SIMPLE IRA 63288878 ("Acct. 8878") should have been—and in fact were—paid as directed. The issue is whether the plan administrator acted properly in identifying certain funds as erroneous contributions and removing those funds from Acct. 8878 before remitting the proceeds to Plaintiff Sarah Ball. Defendants claim that action was necessary to correct a clerical error that would have frustrated the account owner's intent. Plaintiff claims that action was unauthorized and, even if it were authorized, contrary to the evidence before the plan administrator. Therefore the issues before the Court are:

1.    Did a SIMPLE IRA plan administrator have discretion to determine that certain contributions to a retirement account were made in error and to remove those funds from the account?

2.    If so, did that plan administrator abuse its discretion when it determined that all contributions to a SIMPLE IRA made after October 28, 1999 were erroneous, or when it removed those funds from his account before the account proceeds were distributed to the named beneficiary?

## II.    Scope of Review

The Court previously found that Acct. 8878 is an ERISA-governed plan. (Order, Nov. 5, 2015, Dkt. No. 98.) Plaintiff, a beneficiary of that plan, may bring a civil action to recover benefits if those benefits are due to her under the terms of the plan. *See* 29 U.S.C. § 1132(a)(1)(B). A denial of benefits challenged under § 1132(a)(1)(B) is reviewed *de novo* in the district court unless "the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan," in which case the standard of review is for an abuse of discretion. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *see also Feder v. Paul Revere Life Ins. Co.*, 228 F.3d 518, 522–23 (4th Cir. 2000) (abuse of discretion review warranted only when plan "vest[s] in its administrators discretion either to settle

disputed eligibility questions or construe doubtful provisions of the Plan."). No specific phrases or terms are required to confer discretionary authority, but the plan's intention to do so "must be clear." *Gallagher v. Reliance Standard Life Ins. Co.*, 305 F.3d 264, 268–69 (4th Cir. 2002) (citation omitted); *Feder*, 228 F.3d at 522 (a plan will confer discretionary authority "if the terms of a plan indicate a clear intention to delegate final authority to determine eligibility to the plan administrator.").

Under an abuse of discretion standard, an administrator's decision will not be disturbed if it is reasonable, even if the reviewing court would have come to a different conclusion independently. *See, e.g.*, *Evans v. Eaton Corp. Long Term Disability Plan*, 514 F.3d 315, 323 (4th Cir. 2008); *Colucci v. Agfa Corp. Severance Pay Plan*, 431 F.3d 170, 176 (4th Circ. 2005); *Smith v. Cont'l Cas. Co.*, 369 F.3d 412, 417 (4th Cir. 2004); *Feder*, 228 F.3d at 522 (4th Cir. 2000). "[A] decision is reasonable if it is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence." *Ellis v. Metro. Life Ins. Co.*, 126 F.3d 228, 232 (4th Cir.1997) (internal quotation marks omitted); *see also Stup v. UNUM Life Ins. Co. of Am.*, 390 F.3d 301, 307 (4th Cir. 2004); *Bernstein v. CapitalCare, Inc.*, 70 F.3d 783, 788 (4th Cir.1995). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion" and which "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *LeFebre v. Westinghouse Elec. Corp.*, 747 F.2d 197, 208 (4th Cir. 1984) (internal quotation marks omitted).

The Fourth Circuit has provided eight nonexclusive factors, known as the "*Booth* factors," for courts to consider in evaluating whether a plan administrator abused its discretion:

> (1) the language of the plan; (2) the purposes and goals of the plan; (3) the adequacy of the materials considered to make the decision and the degree to which they support it; (4) whether the fiduciary's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan; (5) whether the

decision-making process was reasoned and principled; (6) whether the decision was consistent with the procedural and substantive requirements of ERISA; (7) any external standard relevant to the exercise of discretion; and (8) the fiduciary's motives and any conflict of interest it may have.

*Helton v. AT & T Inc.*, 709 F.3d 343, 353 (4th Cir. 2013) (quoting *Booth v. Wal-Mart Stores, Inc. Assocs. Health & Welfare Plan*, 201 F.3d 335, 342–43 (4th Cir. 2000)). A reviewing court must assess the reasonableness of the administrator's decision based on the facts known to the administrator at the time of the decision. *Id.* at 355.

## III.    Findings of Fact and Conclusions of Law

After careful review of the law, the record, and the parties' positions as expressed in their briefs, the Court makes the following findings of fact and conclusions of law, pursuant to Rule 52 of the Federal Rules of Civil Procedure.

### A.    Conclusions of Law

1.    The Court first concludes that, as a matter of law, an ERISA plan administrator has discretion to determine whether a particular contribution to a retirement plan is made by mistake, and to determine whether such a mistaken contribution should be refunded. ERISA section 403(c)(2) provides that if a contribution "is made by an employer to a multiemployer plan by mistake of fact or law" then the ERISA anti-inurement provision (section 403(c)(1)) "shall not prohibit the return of such contribution or payment to the employer within 6 months after the plan administrator determines that the contribution was made by such a mistake." 29 U.S.C. § 1103(c)(2)(A)(ii). The Fourth Circuit has held that this provision vests "the plan administrator with broad discretion in determining when a refund is appropriate," that the "statute is clear that the administrator is to decide in the first instance whether a particular contribution was made by mistake," and "[i]f the administrator does determine that a contribution was mistaken, the administrator may then decide whether to return the payment." *U.S. Foodservice, Inc. v. Truck*

*Drivers & Helpers Local Union No. 355 Health & Welfare Fund*, 700 F.3d 743, 747 (4th Cir. 2012).

2.     A plan administrator's determination that a contribution was made by mistake is reviewed "for an abuse of discretion, but that standard has always been synonymous with deference." *Id.* at 749.

### B.     Findings of Fact

<u>The Parties</u>

1.     Decedent Edward Robbins Ball, Jr. was the owner of Acct. 8878, the retirement account at issue in this case. (Dkt. No. 91-1.)  He was married to Plaintiff Sarah Johnston Ball, a resident of Charleston County, South Carolina, until February 3, 2000.  (R. at 20–22.) [2]  He subsequently married Brenda Ball.  (Dkt. No. 98.)  He died on April 28, 2011.  (*Id.*)

2.     Defendant Capital Bank and Trust Company ("Capital") is a bank that held Acct. 8878 for the benefit of the Decedent.  (Capital's Mot. for J. 3, Dkt. No. 109, Dec. 19, 2015.)[3]  Defendant American Funds Service Company (incorrectly identified in the Complaint as American Funds Distributors, Inc.) ("American") is a transfer agent of Capital that was responsible for keeping records for Acct. 8878, completing transactions for Acct. 8878, and distributing funds from Acct. 8878.  (*Id.*)

3.     Defendant Marine Linehandlers, Inc. ("MHL") is the successor to Charleston Line Handling Corporation, which MHL acquired.  (R. at 29.)  Decedent was employed by MHL until his death.  (*See* Dkt. No. 78.)

---

[2] The administrative record, stipulated by the parties as Exhibit 1 to the Joint Stipulation of Dec. 18, 2015 (Dkt. No. 105), is referred to herein as "R."

[3] American's motion for judgment is a verbatim copy of Capital's motion.  (Dkt. No. 108.)

The Retirement Plan

4.      Acct. 8878 was a Savings Incentive Match Plan for Employees of Small Employers Individual Retirement Account (a "SIMPLE IRA") held by Capital and managed by America. (R. at 1–3.) It was established in 1998. (*Id.*) It was an ERISA governed plan. (Dkt. No. 98.)

5.      The Plan Sponsor was Mr. Ball's former employer, MHL, successor to Charleston Line Handling Corporation, who was Mr. Ball's employer until MHL acquired it. (R. at 1–3); *see also* 29 U.S.C. § 1002(16)(B) (providing that the employer is the plan sponsor for a single-employer plan).

6.      The plan specifically designated American as the Plan Administrator. Although the plan documents designate American affiliate "Capital Guardian Trust Company" as trustee, the plan documents are themselves entitled "The American Funds Individual Retirement Account." (R. at 502); *see* 29 U.S.C. § 1002(16)(A) (administrator is the party specifically so designated). Additionally, administration of the plan was in fact conducted by American.

7.      Decedent directed that his contributions to Acct. 8878 be evenly divided between four funds, designated as 04, 07, 11, and 12. (R. at 1–3.) Decedent and his employer made contributions to Acct. 8878 in 1998 and 1999. (R. at 114–291.) The last contribution before the contributions at issue in this case was on October 28, 1999. (*Id.*)

8.      Plaintiff Sarah Ball is the sole named beneficiary of Acct. 8878. (R. at 2.)

9.      When MLH acquired Charleston Line Handling, Decedent became an employee of MLH. (Capital's Mot. for J. 3–4.)[4]  Decedent and Plaintiff divorced around the same time, though they

---

[4] When American began to inquire into this matter, MHL inexplicably asserted to American that Decedent remained on a separate Charleston Line Handling payroll through 2003, that his IRA contributions through 2003 were to Acct. 8878, and that Decedent began participating in the SEP IRA in 2004. (R. at 29.) Yet MHL itself attached Decedent's adoption agreement for the Merrill Lynch SEP IRA—plainly dated November 16, 1999—to its motion for judgment. (Dkt. No. 105-3.) That date accords with the cessation of contributions to Acct. 8878 in October 29, 1999. The

had been separated since July 1995. (R. at 20–22.) Decedent then enrolled in MLH's existing SEP IRA plan, managed by Merrill Lynch, and named his father as beneficiary for that plan. (MLH's Mot. for J. Ex. 3, Dkt. No. 105-3, Dec. 18, 2015.)

10.    On January 11, 2007, Decedent applied to establish an American Funds Rollover IRA ("Acct. 9480"). (R. 4–7.) He named his wife, Brenda Ball, beneficiary of the account, and directed that contributions to Acct 9480 be evenly divided between four funds, designated as 05, 16, 35, and 36. (R. at 5, 7.). Those are different funds than those elected for Acct. 8878. Decedent also completed transfer of assets forms directing that funds from the Merrill Lynch-managed IRA be transferred into Acct. 9480, along with the funds from two smaller retirement accounts held by Legg Mason and Citigroup. (R. at 44–46, 50–52, 57–59.)

11.    Acct. 9480 was not established until March 22, 2007. (Capital's Mot. for J. 5.)[5] Because of the delay in creating the account, American received the incoming fund transfers from Merrill Lynch, Legg Mason, and Citigroup before Acct. 9480 existed. (R. at 9 (showing American processing incoming transfers on March 9, 2007).) Thus, the only account Decedent had with American when the incoming transfers were received was Acct. 8878. Because Acct. 8878 was not expecting a rollover contribution, an American employee asked Decedent's broker, David Poulnot, to confirm. (R. at 9–10.) Due to poor communications by American and/or Mr. Poulnot,

---

record clearly shows that Decedent began participating in the Merrill Lynch SEP IRA in late 1999/early 2000, as asserted by American. Therefore, the Court credits the factual assertions of American to the extent that there is a disagreement between MHL and American as to Decedent's dates of employment or plan participation.

[5] American and Capital assert that "American's records show that Acct. 9480 was established on March 22, 2007" without any citation to the administrative record. Moreover, American and Capital assert that because Decedent "never properly completed the paperwork" for this account, it was necessary, after his death, to create a new account (an "Acct. 6702") to receive the funds mistakenly contributed to Acct. 8878. (Capital's Mot. for J. 6.) That suggests Acct. 9480 was never created, and therefore that it was not established on March 22, 2007. Nonetheless, the Court credits Capital and American's signed representation concerning American's own records.

American misunderstood Mr. Poulnot as confirming that the incoming transfers should be placed into Acct. 8878, evenly divided between four funds designated 05, 16, 35, and 36. (*Id.*)

12.    In May 2007, Decedent and MLH began to make contributions to MLH's American-managed SEP IRA. (R. at 920.) However, MLH reported those contributions under Acct. 8878 and those contributions were in fact placed in Acct. 8878, albeit with the fund allocation designated in the application for Acct. 9480. (*Id.*)

13.    Decedent received quarterly account statements showing that his retirement contributions were going into Acct. 8878 and clearly naming Sarah Ball as the beneficiary. (*E.g.* R. at 1180.)

14.    When Decedent died, his broker, Mr. Poulnot, requested that the proceeds of Acct. 9480 be distributed to the beneficiary, Brenda Ball. (R. at 11–12.) He then discovered that Acct. 9480 was not properly funded, and he alerted American to the issue. (R. at 26–27.)

15.    American requested an explanation from MLH. (*Id.*) MLH informed American that no contributions made on behalf of Decedent since 2003 were intended for Acct. 8878 (and, as noted above, there were no contributions to Acct. 8878 from 2000 to 2003). (R. at 29.) American, after review of that response in light of the other available facts, determined that the rollovers into Acct. 8878 and the continuing contributions after May 2007—in other words, all contributions after October 28, 1999—were erroneous. (R. at 30.).

16.    To correct what it had determined to be an error, American transferred all contributions that it had determined to be erroneous out of Acct. 8878. (*Id.*)

17.    American distributed the remaining funds in Acct. 8878 to Plaintiff. (R. at 31–39.)

18.    The funds that American transferred out of Acct. 8878 before distributing proceeds to Plaintiff were promptly distributed to Brenda Ball. (R. at 1194–1202.) Capital and American did not retain any funds due to Decedent's beneficiaries. The effect of American's action was to offset

a decrease the in the distribution to Plaintiff Sarah Ball with an increase in the distribution to Brenda Ball.

Procedural History

19.    Plaintiff filed the present action in the Court of Common Pleas, Charleston County, South Carolina, on October 2, 2013, seeking recovery of the funds American transferred out of Acct. 8878 before the proceeds of that account were distributed to her. (State Ct. Docs., Dkt. No. 1-1.) Defendants removed to this Court on November 4, 2013. (Notice of Removal, Dkt. No. 1.) The Court dismissed all third-party defendants from this action on September 30, 2014. (Order, Dkt. No. 45.). Plaintiff filed an amended complaint on April 10, 2015, asserting claims against Capital and American under 29 U.S.C. § 1132(a)(1)(B) and against Brenda Ball under 29 U.S.C. § 132(a)(3). (Am. Compl., Dkt. No. 64.) Plaintiff also seeks an award of attorneys' fees. (*Id.*) The Court dismissed claims against Brenda Ball on June 8, 2015. (Dkt. No. 78.) Cross-motions for judgment were filed on December 18 and 19, 2015. (Dkt. Nos. 106, 107, 108, 109.)

20.    In their briefs supporting their motions for judgment, Capital and American accuse Plaintiff of intercepting mail addressed to Decedent for the purpose of concealing account statements listing Plaintiff as the beneficiary of Acct. 8878—an act of moral turpitude, if true. (Capital's Mot. for J. 7.) Capital and American cite no evidence in support of that accusation.[6] Plaintiff is due the opportunity to deny the accusation; therefore, the Court will issue an Order granting Plaintiff's unopposed motion to supplement the record (Dkt. No. 113) with affidavits denying Defendants' accusation. Furthermore, the Court credits those affidavits, finds that Plaintiff did not conceal

---

[6] Rule 11 of the Federal Rules of Civil Procedure requires factual contentions in signed papers to have evidentiary support. Fed. R. Civ. Pro. 11(b)(3). It is traditional to cite such support in briefs.

Decedent's account statements from him, and finds that Capital and American's contrary accusation is completely unsupported by the record.

## The Plan Administrator Had Discretion to Identify and to Rectify Mistaken Contributions

21.     The parties stipulated that Acct. 8878 has no plan language that grants the plan administrator discretion "to interpret or apply the plan's benefits." (Dkt. No. 114.) The Court finds that there is no such plan language. However, the Court concluded, *supra*, that, as a matter of law, a plan administrator has discretion to determine in the first instance whether contributions were erroneous and whether such erroneous contributions should be refunded. Therefore, American had discretion as plan administrator to determine whether contributions to Acct. 8878 after October 29, 1999 were erroneous, and to decide whether to require erroneous payments to Acct. 8878 to be refunded. Accordingly, American's exercise of that discretion is reviewed for abuse of discretion.[7]

## The Plan Administrator Did Not Abuse Its Discretion

22.     The Court has considered the *Booth* factors, and, as detailed below, finds that all *Booth* factors relevant to the issues in this case suggest that American exercised its discretion soundly. The Court finds nothing suggesting any abuse of discretion by American.

    *"(1) the language of the plan"*

23.     There is no plan language relevant to the identification or correction of erroneous contributions. (R. at 501–03.)

---

[7] The parties stipulated that the standard of review is *de novo* because they could not identify any plan language granting discretion to correct erroneous contributions. (Dkt. No. 114.) However, the law, not party stipulations, controls the standard of review.

*"(2) the purposes and goals of the plan"*

24.     The purpose of the plan is to hold assets "for the exclusive benefit of the" Decedent and

his beneficiaries.  (R. at 502.)  That purpose is irrelevant as to whether contributions to Acct 8878

were intended as contributions to a different retirement account having an identical purpose.

*"(3) the adequacy of the materials considered to make the decision and the degree to which they support it"*

25.     The materials American considered were adequate to make a decision that Decedent's

retirement account contributions had been misapplied.  There was substantial evidence supporting

American's determination, including:

    a.  a written statement from a corporate officer of Decedent's employer (R. at 29);

    b.  completed application paperwork for Acct. 9480 (there was no reason for Decedent to create Acct. 9480 if he intended to use the existing Acct. 8878 instead) (R. at 4–7);

    c.  Decedent's three transfer request forms, which each specified that Acct. 9480 was the intended rollover destination account (Decedent would not have specified Acct. 9480 on his transfer request forms if he really intended that the funds be transferred to Acct. 8878) (R. at 44–46, 50–52, 57–59);

    d.  MHL's cover letters to its transmittals of funds to American, which indicated that the enclosed contributions, including Decedent's, were for MHL's SEP IRA plan (*e.g.*, R. at 912 (asking for funds to be deposited in Acct. 8878 under the subject line "CB&T Cust IRA/SEP")); and

    e.  the use of the fund distributions Decedent specified in his Acct. 9480 application for his retirement account contributions from 2007 forward (R. at 910–1171).

26.     The only evidence contrary to American's determination was the fact that Decedent

received quarterly statements showing his contributions going to Acct. 8878 and listing Plaintiff

as the beneficiary of that account. (*E.g.* R. at 1180.) But under the abuse of discretion standard of review applicable here, once the Court finds the evidence supporting the plan administrator's decision to be substantial, it is not necessary to weigh that evidence against other evidence to determine whether the Court would have reached a different decision independently.

27.    However, were *de novo* review applicable here, American's decision would be supported by a preponderance of the evidence. Decedent's failing to review his quarterly statements is more likely than Decedent applying to create—and applying to transfer his retirement assets into—an account that he did not intend to use and that his employer perhaps was not allowed to contribute to. *See* 26 U.S.C. § 408(p)(2)(D) (prohibiting employer/employee contributions to a SIMPLE IRA while the employer sponsors another qualified plan (here, MHL's SEP IRA), subject to certain exceptions not applicable in this case).[8]

> *"(4) whether the fiduciary's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan"*

28.    The Court is aware of no provision or earlier interpretation of the plan inconsistent with the actions by American at issue in this case.

> *"(5) whether the decision-making process was reasoned and principled"*

29.    American's decision-making process was reasoned and principled. American was alerted to the error by Decedent's broker, Mr. Poulnot. (R. at 11–12.) American responded by seeking information from MLH. (R. at 26–27.) MLH's response was corroborated by the facts described above: the application for Acct. 9480 (R. at 4–7); Decedent's three transfer request forms (R. at 44–46, 50–52, 57–59), MHL's cover letters to its transmittals of funds to America (*e.g.*, R. at 912),

---

[8] There is no record evidence that this Internal Revenue Code issue was known to the plan administrator, so this fact cannot be considered in reviewing the actions of the plan administrator for an abuse of discretion. *See Helton*, 709 F.3d at 355.

and the distribution of funds as Decedent specified in his Acct. 9480 application (R. at 910–1171). In other words, when Decedent's broker alerted American to a possible error in contribution applications, American properly investigated the situation and took action only after its investigation produced substantial evidence that Decedent's retirement account contributions had been misapplied.

> *"(6) whether the decision was consistent with the procedural and substantive requirements of ERISA"*

30.     ERISA commits the determination of whether account contributions were erroneous "to the sound discretion of the plan administrator." *U.S. Foodservice*, 700 F.3d at 748. Here, American decided that account contributions were erroneous after a reasoned and principled decision-making process. American removed those erroneous contributions and distributed them to the beneficiary of the account for which they were intended. American's actions, therefore, were consistent with the procedural and substantive requirements of ERISA.

> *"(7) any external standard relevant to the exercise of discretion"*

31.     The parties have not brought to the Court's attention any external standard relevant to American's exercise of discretion.

> *"(8) the fiduciary's motives and any conflict of interest it may have"*

32.     American had no conflict of interest in this matter. All monies it determined should be refunded from Acct. 8878 were promptly distributed to Decedent's wife Brenda Ball. (R. at 1194–1202.)

33.     American's motive was proper execution of its fiduciary duty to Decedent by exercising its discretion to correct errors that, if left uncorrected, would frustrate his intentions regarding his funds held in trust by American.

IV.    **Conclusion**

For the foregoing reasons, the Court holds that (1) Defendant American, an ERISA plan administrator, had discretion to determine that contributions to Acct. 8878 were erroneous and to rectify such error, and (2) Defendant American did not abuse that discretion when it determined that contributions to Acct. 8878 after October 29, 1999 were erroneous or when it removed those erroneous contributions from that account. An Order entering Final Judgment against Plaintiff and in favor of Defendants will issue.

_____
Richard Mark Gergel
United States District Court Judge

February **3** , 2016, *nunc pro tunc* to January 28, 2016
Charleston, South Carolina